Thomas O. MIMICK and Michele
R. Mimick, Appellees,

v.

UNITED STATES of America, Appellant.

UNITED STATES of America and Special Agent Mark A. Kula, Internal
Revenue Service, Appellants,

v.

Thomas O. MIMICK and Michele
R. Mimick, Appellees.

Nos. 91–1695, 91–1696.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1991.

Decided Dec. 26, 1991.

Gary R. Allen, Washington, D.C. (William A. Whitledge and Charles E. Brookhart, on brief), for appellants.

Allen L. Fugate, North Platte, Neb., for appellees.

Before LAY, Chief Judge, and ARNOLD, Circuit Judge, and STUART *, Senior District Judge.

STUART, Senior District Judge.

The United States appeals from an order of the United States District Court for the District of Nebraska denying enforcement of three administrative summonses. We are called upon to determine whether the copies of the summonses issued to the taxpayers satisfy the requirement that an "attested copy" be served pursuant to 26 U.S.C. § 7603 (1988).

I.

Taxpayers, Thomas and Michele Mimick, are husband and wife residing in North Platte, Nebraska. As the result of an audit of taxpayers' 1986 and 1987 income tax

* The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

returns, Special Agent Mark Kula of the Internal Revenue Service (IRS) issued summonses to the taxpayers and to two banks as third party recordkeepers. The summons (IRS Form 2039) is a five part form consisting of the original summons, a copy to be served on the summoned party (Part A), an instruction sheet to accompany the service copy (Part B), a copy to be sent to the taxpayer as notice that a summons has been served on a third party recordkeeper (Part C), and a sheet containing instructions for filing a petition to quash a third-party recordkeeper summons (Part D). The five parts are held together by adhesive, and carbon paper inserted in front of Parts A and C ensures that information typed or written onto the original summons appears on those copies as well.

The taxpayers filed a petition to quash the bank summonses in the district court. The IRS responded by seeking enforcement of each of the summonses. Taxpayers' primary defense was that the summonses were unenforceable because the agent did not serve "attested" copies as required by § 7603 of the Internal Revenue Code.

Agent Kula testified at the hearing in this case that he compared the copies of each summons with the original to ensure that they were exact copies. He also certified on the back of each of the original summonses that he had served "an attested copy of the summons" as required by § 7603. None of the copies served, however, contain any certification or affirmation that it is a true and correct copy of the original. Although the signature on each original shows onto the carbon copy, none of the copies bear an original signature.

The district court denied enforcement of the summonses. The court found that an "attested copy" of a document is "one which has been examined and compared with the original, with a certificate or memorandum of its correctness, signed by the persons who have examined it." (Quoting *Black's Law Dictionary* 66 (5th ed. 1979).) Because the copies of the summonses served on the taxpayers and the banks did not include signed written notations that the copies were correct copies of the origi-

nals, the court concluded that they were not attested copies and could not be enforced. This appeal followed. We agree that the copies were not attested but reverse and remand for reasons hereinafter set forth.

## II.

■ Under § 7603 of the Internal Revenue Code of 1986, 100 Stat. 2778, as amended, 26 U.S.C. § 7603 (1988), a summons "shall be served by the Secretary, by an *attested copy* delivered in hand to the person to whom it is directed, or left at his last and usual place of abode...." (Emphasis added.) The requirement has its origin in the Act of July 13, 1866, § 9, 14 Stat. 98, 102. A contemporary dictionary defines the word "attest" as "to bear witness to; to certify; to affirm to be true or genuine; as, to *attest* the truth of a writing; to *attest* a copy of record." *Webster's Dictionary* 90 (rev. ed. 1864).

It would have been quite natural for the members of the 39th Congress to require a separate attestation that the summons served was a true copy of the original. Summonses and copies thereof typically were handwritten in that era, and the attestation provided the summoned party with the assurance that the summons was genuine and correct. Carbon paper and typewriters were not widely used until later in the 19th and early 20th century, and photocopiers have become widely used only within the last thirty years or so.

For this reason, the IRS contends that, whatever the past necessity of an attestation, the service of a carbon copy of an original summons satisfies the requirement of the statute today. We cannot say, however, that Congress would, if it considered it, no longer require a separate attestation of copies of the original summons—especially in light of the ease with which documents may be made to appear genuine by the use of modern technology. We do know that Congress has retained the requirement, through revisions and re-enactments of the Internal Revenue Code in 1939, 1954, and 1986.

■ We therefore concur with the court below that an "attested copy" of a document is "one which has been examined and compared with the original, with a certificate or memorandum of its correctness, signed by the persons who have examined it." *Accord Henderson v. United States,* 778 F.Supp. 274, 277 (D.S.C.1991). *See also Winter v. Casco Bank & Trust Co.,* 396 A.2d 1020, 1022 (Me.1979); *Black's Law Dictionary* 66 (5th ed. 1979); 4A Words & Phrases *Attest* 505–13 (1969 & Supp.1991). It follows that the summonses issued in this case did not comply with the statute. Our holding is consistent with the authorities cited above and preserves the meaning of a word which appears with some frequency throughout the United States Code.

### III.

■ The IRS contends, in the alternative, that its failure to follow an administrative step required by the Code does not require per se denial of enforcement of a summons. In *United States v. Gilbert C. Swanson Foundation, Inc.,* 772 F.2d 440 (8th Cir.1985), we held that the failure to follow the procedures set forth in an IRS delegation order did not render the summons unenforceable. We stated:

> We take very seriously the statutory and administrative regulations that govern the issuance of IRS summonses. They are an essential check on the discretion of an agency with broad investigatory powers over all American citizens. Nevertheless, in the circumstances of this case, we believe denial of the summons would be an elevation of form over substance.

772 F.2d at 441. We adopted the approach used by the Fifth Circuit for determining whether to enforce a summons. This approach "requires the court to evaluate the seriousness of the violation under all the circumstances including the government's good faith and the degree of harm imposed by the unlawful conduct." *Id.* (quoting *United States v. Payne,* 648 F.2d 361, 363 (5th Cir.1981), *cert. denied,* 454 U.S. 1032, 102 S.Ct. 570, 70 L.Ed.2d 476 (1982)).

At the hearing in this case, the IRS presented unrefuted evidence that it acted in good faith. Prior to the district court's ruling, the IRS possessed in good faith an interpretation of § 7603 which did not require a separate attestation on the copy of the summons served. The agent who issued the summonses followed the administrative instructions and, indeed, compared the copies with the originals to ensure that they were identical.

No evidence indicates that any of the summoned parties hesitated to act or lost substantial rights because of the absence of an attestation on the copy of the summons served. The evidence shows that the copies served are true and correct copies of the originals and lack only the attestation to fully comply with the requirements of § 7603.

Under all of the circumstances as they appear in the record, we conclude that the trial court should have followed the approach we adopted in the *Swanson Foundation* case and that it erred in refusing to enforce the summonses. Accordingly, we hold that the summonses are enforceable notwithstanding the lack of separate attestations. The decision of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

As the Internal Revenue Service has now been alerted to the requirements for an attested copy, future summonses should comply with this holding.