**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

KEITH A. SCHOOLEY,

Plaintiff-Appellant,

v.

MERRILL LYNCH, PIERCE,
FENNER & SMITH, INC.,

Defendant-Appellee.

No. 95-6465
(D.C. No. CIV-94-1357-A)
(W.D. Okla.)
(867 F. Supp. 989)

ORDER AND JUDGMENT[*]

Before PORFILIO, BALDOCK, and HENRY, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The question raised in this appeal is whether employment-related claims plaintiff Keith Schooley brought against his former employer defendant Merrill Lynch, Pierce, Fenner & Smith, Inc., are subject to arbitration. The district court concluded that they were and compelled arbitration, which ended in a result unfavorable to Mr. Schooley. Mr. Schooley appeals, contending that the district court erred in compelling arbitration.[1] We have jurisdiction pursuant to 9 U.S.C. § 16, and review the district court's order compelling arbitration de novo, see Armijo v. Prudential Ins. Co., 72 F.3d 793, 796 (10th Cir. 1995). We affirm.

Mr. Schooley began working for Merrill Lynch in July 1991, and at that time entered into a Financial Consultant Trainee Agreement with Merrill Lynch. The trainee agreement provided generally that in return for salary and training to be provided by Merrill Lynch, Mr. Schooley agreed to certain conditions governing the ownership of records, solicitation of Merrill Lynch clients after termination of employment, and repayment of training costs. On three occasions during his employment with Merrill Lynch, Mr. Schooley filed a form called Uniform Application for Securities Industry Registration or Transfer ("U-4 form") with various self-regulatory organizations, see 15 U.S.C. § 78c(a)(26), including the New York Stock Exchange, which registered him with those organizations.

---

[1] We note that Mr. Schooley failed to attach a copy of the court's order compelling arbitration to his opening brief, as required by 10th Cir. R. 28(2)(d).

Merrill Lynch terminated Mr. Schooley's employment in October 1992. As a result, Mr. Schooley filed a state court action that included claims for tortious breach of contract, constructive discharge, misrepresentation, negligent and intentional infliction of emotional distress, invasion of privacy, and fraudulent contractual interference. Merrill Lynch removed the case to federal court and moved to compel arbitration. The district court granted the motion. The court rejected Mr. Schooley's argument that the trainee agreement specifically required application of Oklahoma law, which prohibited arbitration in this case. Instead, the court concluded that the U-4 forms contained a valid arbitration clause and that pursuant to the Federal Arbitration Act ("FAA"), it must enforce the clause notwithstanding any contrary Oklahoma law regarding the enforceability of arbitration agreements.

The matter proceeded to arbitration, and the arbitration panel rejected Mr. Schooley's claims. Merrill Lynch applied to the district court for confirmation of the arbitration award. Though not objecting to any specific aspect of the award, Mr. Schooley repeated his contention that his claims were not subject to arbitration. The district court confirmed the award and entered judgment thereon.

"[A]rbitration is simply a matter of contract between the parties . . . ." First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1924 (1995). The

FAA, 9 U.S.C. §§ 1-16, does not impose any requirement to arbitrate a particular dispute, but it "reverse[s] the longstanding judicial hostility to arbitration agreements . . . , and . . . place[s] arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991); see also Volt Info. Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 479 (1989) ("Arbitration under the Act is a matter of consent, not coercion . . . ."). State contract law principles generally govern whether parties have agreed to arbitrate. See, e.g., First Options, 115 S. Ct. at 1924. But where parties agree to arbitrate, federal law, through the FAA, upholds that agreement, and preempts state law prohibiting arbitration. See Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).

We agree with the district court that Mr. Schooley contractually bound himself to arbitrate the present dispute through the U-4 forms he signed. The forms contain the following provision:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 . . . and that any arbitration award rendered against me may be entered as a judgement [sic] in any court of competent jurisdiction.

-4-

E.g., Appellee's Suppl. App. at 27.[2]  In turn, New York Stock Exchange Rule 347

provides that

> [a]ny controversy between a registered representative and any
> member or member organization arising out of the employment or
> termination of employment of such registered representative by and
> with such member or member organization shall be settled by
> arbitration, at the instance of any such party, in accordance with the
> arbitration procedure prescribed elsewhere in these rules.

Id. at 32.  There is no question that Mr. Schooley is a registered representative,

that Merrill Lynch is a member organization, or that Merrill Lynch insisted on

resolving this employment controversy by arbitration.

Mr. Schooley challenges the obligation to arbitrate imposed through the

U-4 forms and Rule 347 on several bases.  First, he contends that Merrill Lynch

cannot insist on any obligation to arbitrate because the U-4 forms are agreements

between him and the New York Stock Exchange, not between him and Merrill

Lynch.  He cites no authority supporting this position, and it is clear that no

separate contract between himself and Merrill Lynch is necessary.  "[T]he

arbitration rules of a securities exchange are themselves 'contractual in nature,'"

and they are "'sufficient to compel arbitration of exchange-related disputes in the

---

[2]     The organizations indicated in item 10 on the various U-4s included the
New York Stock Exchange, the American Stock Exchange, and the National
Association of Securities Dealers.  The district court held that it needed to find
that only one of these organizations required arbitration of this dispute to compel
Mr. Schooley to arbitrate, and he does not contest that determination on appeal.
The district court relied on the rules of the New York Stock Exchange, as do we.

absence of a specific written arbitration agreement.'" Spear, Leeds & Kellogg v. Central Life Assurance Co., 85 F.3d 21, 26 (2d Cir.) (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109, 113 (2d Cir. 1990)), cert. denied, 117 S. Ct. 609 (1996)); accord Tullis v. Kohlmeyer & Co., 551 F.2d 632, 635-37 (5th Cir. 1977) (holding that stock exchange rules constitute contract between all members and rules' arbitration provisions have contractual validity); see also Gilmer, 500 U.S. at 25 n.2 (enforcing arbitration clause contained in employee's U-4 form despite absence of separate agreement requiring arbitration with member organization); N. Donald & Co. v. American United Energy Corp., 746 F.2d 666, 670 (10th Cir. 1984).[3]

Mr. Schooley next contends that the trainee agreement prohibited Merrill Lynch from demanding arbitration because that agreement specifically states it is governed by Oklahoma law and Oklahoma law prohibits arbitration of employment disputes, see Okla. Stat. tit. 15, § 818. The trainee agreement contained a choice-of-law clause but no arbitration clause; it did not mention arbitration except in a manner not relevant here. Given that the U-4 forms

---

[3]    In his reply brief, Mr. Schooley also contends that New York Stock Exchange Rule 600(a) requires the existence of a written agreement to arbitrate in addition to the U-4 forms. He did not raise this argument in the district court or in his opening brief; we therefore will not consider it. See Walker v. Mathers (In re Walker), 959 F.2d 894, 896 (10th Cir. 1992); Codner v. United States, 17 F.3d 1331, 1332 n.2 (10th Cir. 1994).

represent valid agreements to arbitrate between the parties, and construing the two agreements together, cf. id. § 158, we cannot agree that the choice-of-law provision trumps the arbitration agreement. See Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S. Ct. 1212, 1219 (1995) (construing general choice-of-law provision to encompass substantive state law principles regarding rights and duties of the parties, but not limiting authority to arbitrate); Southland Corp. 465 U.S. at 10; see also Gilmer, 500 U.S. at 26 ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.") (quotation omitted).

Finally, Mr. Schooley contends that even if the district court correctly concluded that the FAA applied, the FAA pre-empted only Okla. Stat. tit. 15, § 818, and not other Oklahoma law governing arbitration. The only provisions of Oklahoma law he specifically contends the court should have applied are procedural provisions relating to the amount of time he claims he should have had to move to vacate or object to confirmation of the award, see Okla. Stat. tit. 15, §§ 811, 812. However, he admits that the court correctly followed the FAA's procedures, see 9 U.S.C. §§ 9, 12, and that Oklahoma law conflicts with these procedures. We see no error in the court's applying federal law in this situation.

Mr. Schooley's motion to file a corrected reply brief is GRANTED. The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Robert H. Henry
Circuit Judge